UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

No. 22-cr-20433

v.

Hon. Gershwin A. Drain

Douglas Heard,

Defendant.

_____/

## United States' Sentencing Memorandum

### Introduction

In May of 2021, Douglas Heard was identified by the Drug Enforcement Administration (DEA) as one of the many people around the country buying pill making equipment and supplies.  Heard was later arrested in possession of hundreds of counterfeit pharmaceutical pills containing fentanyl and methamphetamine.  But for the DEA intercepting the pills, Heard would have contributed to the ongoing drug trade and availability of deadly counterfeit pharmaceuticals that continue to plague communities across the country.

The United States believes that a sentence of 132 months appropriately considers all facets of 18 U.S.C. 3553(a). A 132-month sentence falls within the guideline range recommended by probation and it will provide just punishment

while protecting the community and assisting the defendant in avoiding recidivist conduct.

## Factual Background

In May 2021, DEA investigators received information from LFA Machines DFW LLC (LFA), a company with facilities in Texas, Germany, England and Taiwan that sells pill presses and related components. The information contained historical ordering information for both tableting machines and Firmapress (a pill binding ingredient sold by LFA). Multiple purchases had been made from LFA by Douglas Heard and Shawnlee Heard including Tableting Machine 1, Model TDP 5, purchased in November 2020, and Machine 2, Model TDP 5, purchased in March 2021. Both of these machines are sold by and shipped from LFA. A TDP 5 pill press is capable of producing up to 4,800 tablets per hour, able to press tablets of any shape and retailed at that time for $2,599.00. Douglas Heard was listed as the intended recipient at his residential address in Mount Clemens, Michigan.

Investigators also subpoenaed LFA and requested due diligence declarations, order details, shipment tracking numbers and customer contact information for Heard. A due diligence from is required from the purchaser at the time of purchase and is to provide detail related to the intended use for the items from LFA and the materials to be processed through the press. The due diligence form also obtains a commitment from the purchaser that in the event that the pill press machine is

moved from the delivery address, the purchaser commits to immediately advising DEA of the new location.

On LFA's Due Diligence Form for the machines ordered by Heard, the stated the intended purpose for each of the machines were:

Machine 1: "Required bear candy cocoa butter Soy Sugar Almonds Butter";

Machine 2: "Flower Sugar Binder Corn Starch".

Douglas HEARD listed the following company information on the form - Machine 1: "Mr. D. Transport"; Machine 2: "Mr. Ds". Douglas HEARD also attached a digital image of his Michigan Chauffeur License with his address reflected as being his home in Mount Clemens, Michigan.

The documents obtained from LFA also revealed that Heard had ordered numerous parts for a TDP 5 pill press, between July 2020 and November 2021. Heard ordered 45 parts, via 12 orders, for a total price of approximately $2,921.49. Heard also provided an address, cellular telephone number, and an email address at the time of purchase for the pill presses and press parts. Heard listed his home address in Mount Clemens, Michigan as the delivery location for the pill presses, and various replacement parts.

Another order to LFA, in the name of Shawnlee Heard, ordered Firmapress White, which was received in May 2021. Shawnlee Heard provided the same Mount Clemens residence address and email address as Douglas Heard on her

order. LFA sells a product called, "Firmapress" described on their website as, in part, "A combination of high-quality excipients designed to take unnecessary research out of tableting to save you time and money. With Firmapress, you won't have to measure and mix binders or flow agents and there are no ratios to calculate. We've put everything we've learned over the last 10 years into Firmapress so that you can produce pharmaceutical grade tablets right away."

https://www.lfatabletpresses.com/ready-mix-firmapress

Law enforcement databases also revealed multiple purchases from a dark web market, between November 2020 and March 2021. The orders included punch molds/dies and binding agents. The order information included the same address, phone number and email address for Douglas Heard as his LFA purchases.

Douglas Heard was also linked to dark web orders for punch molds/dies described as "M30 CONCAVE TDP-5 or TDP 0/1.5 6.45mm Thickness Adjustment - Complete Set WITH LINE," "M30 TDP-0/1.5 or TDP-5 PUNCH Mold Complete Set Thickness Adjustment," three orders of "Baby Blue Color Premium Compression Binder MIX (Ultra Bond)" and an order of "WHITE Color Premium Compression Binder (Ultra Bond)."

Premium "compression binder extra bind is pharmaceutical grade ingredients, Micro Crystalline Cellulose, Magnesium Stearate, Silicon Di-oxide, Di-Calcium Phosphate, Stearic Acid, mixture is widely used for binding, bulking, and

anti-caking agent in manufacturing of Pill and Tablets."

https://www.myvitaminpress.com/PREMIUM-COMPRESSION-BINDER-SALE_c_12.html. The website also states, "Compression Binder Agent is a great product that can help produce a solid stable consistently formed tablet without having to worry about crumbling of falling apart pills." (*Id.*).

A legitimate oxycodone 30mg pill that is stamped "M30",  is primarily produced in a blue color, (see below picture from drugs.com).



DEA learned that in November 2020, U.S. Customs and Border Protection (CBP) intercepted a shipment/package from China addressed to "Mr. D Transport" at Heard's residential address. Inside the package, CBP Officers located a pill press M30 mold/die (see below images from CBP's seizure). The shipment was seized for "Failure to Declare Drug Paraphernalia".




Heard was also identified in dark web orders for punch molds/dies described as "M367 OVAL Punch TDP-5 or TDP-0/1.5 Complete Set". There is a hydrocodone-acetaminophen 10-325mg pill that is stamped "M367". Hydrocodone-acetaminophen is a Schedule 2 controlled substance, also known as Norco and Vicodin.

According to the records provided by LFA and law enforcement databases, Douglas Heard and Shawnlee Heard ordered 15 kilograms of binding agent between November 2020 and May 2021. The volume of binding agent purchased by Heard and his wife could be used to manufacture an estimated 111,000 sized oxycodone 30mg tablets, or 35,700 sized hydrocodone-acetaminophen 10-325mg tablets).

On January 11, 2022, at approximately 7:30 a.m., DEA investigators established surveillance on Heard's house and later followed Heard as he drove southbound onto I-75 into Ohio.  Following a traffic stop by the Ohio State Patrol, a

search of the Heard's Dodge Ram revealed approximately 7.9 pounds of marijuana in a suitcase in the rear bed of the vehicle. The search also revealed one (1) open bag of blue pills, found in a backpack in the truck and an open bag of blue pills located on the floor of the vehicle behind the center console. The bags contained a total of 941 blue pills, marked "M30". It was later confirmed through lab testing that the pills contained fentanyl.

Later that day, a search warrant was executed at Heard's house by the Clinton Township Police Department and members of DEA. Law enforcement seized two firearms and approximately 2.27 kg of suspected marijuana inside the house. The firearms, an assault rifle and a semi-automatic handgun were found in Heard's bedroom.  Inside the same bedroom, law enforcement discovered a safe. In a call to his wife from the Ohio jail where Heard was being held, he directed her to "not open the safe." Notwithstanding, Shawnlee Heard told officers that she did not know the safe's combination and stated that the safe belonged to Douglas Heard. The safe was seized and later opened. In the safe, investigators located an additional 1883 pills, some with "M30" markings that matched the seized pill die (see images below), that contained fentanyl and methamphetamine.

 

Of note, the two TDP 5 pill press machines that were ordered by Heard in November 2020 and March 2021, the replacement parts, binder, and dies connected to dark web purchases were not found at Heard's house on January 11, 2022.  DEA was never contacted by either Douglas or Shawnlee Heard to advise that the pill press machines have been moved or where they are currently located.

The grand jury returned a First Superseding Indictment on October 13, 2022 with charged Douglas Heard with Count 1, Possession with the Intent to Distribute a Controlled Substance (Methamphetamine), in violation of 21 U.S.C. § 841(a)(1); Count 2, Possession with the Intent to Distribute a Controlled Substance (Fentanyl), in violation of 21 U.S.C. § 841(a)(1)l; and Count 3, Maintaining a Drug House, in violation of 21 U.S.C. § 856(a)(1). (ECF No. 15). On June 6, 2023, Heard pleaded

guilty to Counts 1 and 2 of the First Superseding Indictment via Rule 11 Plea Agreement. He is scheduled to be sentenced on September 25, 2023.

## Sentencing Guideline Calculations

### A.    The Advisory Guideline Range

District judges can find the facts necessary to calculate the appropriate Guidelines range using the preponderance of the evidence standard. *United States v. Lacefield*, 250 Fed. Appx. 670, 676 (6th Cir. 2007), citing *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir.2006). At sentencing, the court should consider all the statutory factors under §3553(a) to determine whether they support the sentence requested by either party prior to imposing sentence. *United States v. Gall*, 552 U.S. 38, 41 (2007).

The guideline range calculated by the United States Probation Department and Probation Officer Grewe determined the guideline range to be 108 – 135 months.  Heard also faces a 120-month mandatory minimum sentence on Count 1 and a 60-month mandatory minimum sentence on Count 2. His effective guideline range is therefore 120 -135 months.  The Government concurs with the probation department's guideline range as calculated.

## Consideration of 18 U.S.C. § 3553(a) Sentencing Factors

Pursuant to 18 U.S.C. §3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a sentence sufficient, but not greater

than necessary are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

### A.   Imposition of a Sentence; Nature and Circumstances of the Offense and the History and Characteristics of the Defendant; 18 U.S.C. § 3553(a)(1)

### Nature and Circumstances of the Offense

The nature and circumstances of the offenses are detailed in Section I above and in the Presentence Report prepared by the United States Probation Department. Additional considerations related to the offense are also detailed below. The government also respectfully requests that the court consider the nature and characteristics of the defendant, Mr. Heard, particularly those that relate to his ill-fated choices here.

### Defendant's History and Characteristics

The Presentence report reveals that Mr. Heard advised that he was raised by both parents in a good environment free of abuse and neglect. (PSR ¶45).  He is a married father of two children, one adult and one minor.  (PSR ¶46). Heard has a

GED and building certifications. (PSR ¶54). He is the owner of two companies and was previously employed as an engineer at Melco Engineering. (PSR ¶56). Heard reports that one of his companies generates a substantial amount of income annually. (PSR ¶57). Heard does not suffer from substance abuse problems or psychological issues.  (PSR ¶50).

With respect to his criminal history, Heard has one firearm related felony conviction from 2007 for which he was placed on probation.  (PSR ¶39).

In this case, Heard was in possession of numerous pills that appeared to be legitimate pharmaceuticals. They instead contained highly addictive and deadly controlled substances. The street value of the pills could easily surpass $50,000. Heard was engaged in a goal directed effort to transport the pills that were in his possession across the country. In doing so, Heard would have contributed to the drug trade and the challenges that it causes drug users and that eventually results in serious detriment to those individuals lives. Fortunately, Heard was intercepted by police before he could complete his trip.

### 2. Seriousness of the Offense, Promoting Respect for Law, and Providing Just Punishment; 18 U.S.C § 3553(a)(2)(A)

Equally as important as the details of these offenses, are their seriousness. The offense is societal and causing greater damage each year.  There are no overt acts of violence charged against the defendant in this case.  However, felony conduct involving the distribution and illegal sale of narcotics is serious and can

produce results that are remarkably similar to violent crime – psychological trauma, physical injury, the destruction of families and ruin of lives. It would be difficult to argue that facilitating the availability of drugs - as defendants attempt to mitigate by the often-stated phrase: "drug offenses are serious, but not crimes of violence" - is at all accurate.  The aftermath of drug crime shares many of the same aspects as crimes of violence. The added possession of firearms where drugs are stored, heightens the danger to the community and potential for violence.

Narcotics trafficking continues to destroy the lives of those addicted to illegal drugs.  It also destroys the lives of defendants who commit these crimes.  The families and children of the Defendant's customers are impacted both financially and emotionally. The drug users are impacted physically. Their addiction and downward spiral continue. Fortunately, Heard's efforts were interrupted by DEA. Unfortunately, the location of tools used to produce these types of drugs, connected to Heard and his wife, remain unknown. As do the number of pills produced that have escaped interception by law enforcement.  Heard's choice to distribute the pills to make money, or for whatever benefit Heard hoped to realize, ended with Heard charged with federal drug trafficking offenses and facing mandatory time in prison.

Drug trafficking is a dangerous crime, and it is not victimless. Drug trafficking and the subsequent use of drugs play a predominant role in the

degradation of our communities and frequently contribute to violence and other types of crime. See *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) ("If a criminal defendant possesses an illegal substance with the intent to distribute that substance to others, unquestionably there are victims. The lack of an identifiable person in this case does not equate to a completely "victimless" crime. …. Society … is the victim when illegal drugs are being distributed in its communities"). See also *United States v. Ford*, 724 Fed. Appx. 428 (6th Cir. 2018) (recognizing the seriousness of drug crimes).

Heard's plan to distribute methamphetamine and fentanyl, highly addictive and in many cases deadly drugs, was dangerous and destructive. Meth use results in psychosis, paranoia, hallucinations, changes in brain structure and function, memory loss and aggressive or violent behavior. https://nida.nih.gov/. A 2019 report from the National Library of Medicine found that methamphetamine, a psychostimulant agent, was the second most frequently used drug of abuse worldwide with approximately 34 million users worldwide in 2013. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6754634.

It has become common knowledge that fentanyl is highly addictive and 50 times stronger than heroin.  DEA analysis conducted in 2022 revealed that 6 out of 10 counterfeit prescription pills that have been seized and contain fentanyl,

contained a lethal amount of the drug. https://www.dea.gov/alert/dea-laboratory-testing-reveals-6-out-10-fentanyl-laced-fake-prescription-pills-now-contain.

In 2021, DEA seized 20,000,000 fake pills containing fentanyl.

https://www.dea.gov/sites/default/files/2021-12/DEAOPCK_FactSheet_December%202021.pdf

The internet and local media are laden with volumes of reports of overdoses and deaths resulting from the very types of pills Heard was arrested with.  A sentence within the guideline range, will provide just punishment for Heard and hopefully convince him that the choice to engage in crime, no matter what his personal or financial circumstances are, or for whatever reason he though his conduct here was a good choice, cannot be any part of his future.

### 3.    Deterrence; 18 USC §3553(a)(2)(B)

Another consideration of 3553(a) is the need to deter continued conduct of this type by the defendant and to deter such conduct by others. "General deterrence . . . is one of the key purposes of sentencing. . . ." *United States v. Walker,* 844 F.3d 1253, 1257–58 (10th Cir. 2017); *United States v. Sample,* 901 F.3d 1196 (2018); see also *United States v. Milo*, 506 F.3d 71, 76 (1st Cir. 2007) ("The need to deter others is under federal law a major element in criminal sentencing.").

Sentencing in the federal system contemplates both specific and general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); see also *United*

*States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006), (affirming a defendant's sentence where the district court in its §3553 analysis stated that it doubted the defendant would ever engage in the conduct again, but that a primary sentencing factor was the need "to deter other similarly situated individuals from engaging in the conduct").

This district alone has experienced a significant number of cases involving counterfeit pharmaceuticals containing fentanyl and methamphetamine.   Over the last three years, seven or more cases involving pill presses and the components necessary to produce counterfeit pharmaceuticals have been indicted in the Eastern District of Michigan.  Given that, general deterrence is equally important.  Because of Heard's decision to violate the law and the nature of the convictions, the United States requests a sentence of 132 months, that will reflect the need that such conduct be deterred individually and generally.

### 4.    Protecting the Public; 18 U.S.C. §3553(a)(2)(C)

As to protecting the public from further crimes of this defendant, the United States is hopeful that Mr. Heard will refrain from future illegal activity. He is the author of his own narrative and clearly associated with other's previous possession and manufacture of the counterfeit pills.  Hopefully Heard will take advantage of all program assistance that is provided to him while he is serving any sentence the

court imposes. For any period that he is incarcerated or under supervision, it is likely society will be protected.

## Conclusion / Government Recommendation

The United States certainly recognizes the ability and responsibility of the Court to fashion a sentence within, or perhaps, outside of a particular sentencing guideline range. The balance between fashioning a sentence that accounts for all of the 3553(a) factors is not a simple mathematical equation. The individual facets of each case and each defendant have significant impact. "Inevitably, not all § 3553(a) factors are important in every sentencing; often one or two prevail, while others pale." *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007).

The offenses are serious. The manufacture and distribution of controlled substances, appearing to be another drug altogether, would have had destructive impact. Fortunately, they did not.

Given the above considerations, the United States respectfully requests that the court consider the above arguments and recommendations and impose a sentence of 132 months for Defendant Heard, sufficient, but not greater than necessary, to punish him for his conduct. Further, that any period of incarceration be followed by the required term of supervised release of four (4) years.

Respectfully Submitted,

Dawn N. Ison
United States Attorney

*s/Timothy P. McDonald*
Timothy P. McDonald
Assistant United States Attorney
211 W. Fort St. Suite 2001
Detroit, MI 48226
(313) 226-0221
timothy.mcdonald@usdoj.gov

Dated: September 20, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, September 20, 2023, I electronically

filed the foregoing document with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to the following:

Todd Russell Perkins, Esq.

*s/Timothy P. McDonald*
Timothy P. McDonald
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0221
timothy.mcdonald@usdoj.gov